**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Nathan C. Braun,

          Plaintiff,

v.

Christopher Vierzba,

          Defendant.

Case No. 26-CV-00401 (DWF/ECW)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Plaintiff Nathan C. Braun's filing titled "Civil Suit for Violation of Constitutional Rights and Breach of Contract" (Dkt. 1 ("Complaint")) and Petition to Proceed In Forma Pauperis (Dkt. 2 ("IFP Application")). For the following reasons, the Court recommends dismissing this action and denying the IFP Application as moot.

## I.    FACTUAL BACKGROUND

For purposes of this screening, the Court accepts the Complaint's factual allegations as true. In July 2017, a jury in Minnesota's Benton County found Braun guilty of third-degree criminal sexual conduct. (*See, e.g.*, Register of Actions, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct.).[1]) Judge Robert Raupp later sentenced him to 91 months' imprisonment, to be followed by a 10-year "[c]onditional [r]elease" period.

---

[1]    The Court can take judicial notice of public state-court records. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)).

(*See id.*)  As the Court understands the record, Braun was later released from imprisonment and began a period of intensive supervised release ("ISR").

Braun alleges that in November 2022, while he was on ISR, he entered into an oral agreement with Christoper Vierzba—this action's sole defendant—identified as an "ISR Agent."  (*See* Dkt. 1.)[2]  Under this alleged agreement, if Braun took (and passed) a polygraph examination "tending to prove [Braun's] innocence," then Vierzba would "do everything he could" to help Braun overturn that conviction, including providing "testimony and evidence" to assist Braun.  (*Id.*)[3]  Braun alleges that he completed this polygraph on December 14, 2022, and passed it.  (*See id.*)  Despite this outcome, Vierzba allegedly refused to perform his side of the bargain.  (*See id.*)

Indeed, Braun alleges that, rather than helping him, Vierzba obtained a warrant for Braun's arrest, arrested Braun at work, and then performed searches that Braun claims were unlawful.  (*See id.*)  Braun claims that Vierzba searched Braun's "workplace," "locked vehicle," and "two locked cellphones," even though the warrant was "solely for the allegation of [Braun] not maintaining residence at the ISR leased house."  (*Id.* at 1-2.)  Braun asserts that policies of the Minnesota Department of Corrections ("MDOC") permit only a search of one's person in these situations.  (*See id.* at 1.)  Braun claims that

---

[2]    Braun purports to sue Vierzba in both his individual and official capacities.  (*See* Dkt. 1 at 2.)

[3]    Though it is not entirely clear from the Complaint, the Court assumes that the relevant conviction here is Braun's original conviction for third-degree criminal sexual conduct in No. 05-CR-16-1323.

2

by exceeding the arrest warrant's scope and violating MDOC policy, Vierzba violated

Braun's rights under the Fourth, Fifth, and Fourteenth Amendments.  (*See id.* at 1-2.)

Braun further alleges that Vierzba filed a "[f]alse [r]eport to Child Protection"

claiming that Braun had unauthorized contact with his minor daughter, even though

Braun says that this contact had been "approved on a daily basis . . . for months" by a

team of ISR-related officials.  (*Id.* at 2 (emphasis removed).)  Braun explicitly describes

Vierzba's conduct as "retaliatory."  (*Id.*)  Braun claims that these events caused him to

lose his employment, lose the ability to see his daughter, and miss the birth of his twin

infants.  (*See id.*)

For relief, Braun seeks $250,000 (presumably meaning compensatory damages)

and an additional $500,000 for "emotional damages."  (*Id.*)

## II.    ANALYSIS

### A.    Standard of Review

Rather than pay this action's filing fee, Braun submitted the IFP Application.

Under the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or

any portion thereof, that may have been paid, the court shall dismiss the case at any time

if the court determines that . . . the action . . . is frivolous or malicious[,] fails to state a

claim on which relief may be granted[,] or seeks monetary relief against a defendant who

is immune from such relief."  28 U.S.C. § 1915(e)(2).

To decide if a complaint states a claim for which a court may grant relief, a district

court accepts the complaint's factual allegations as true and draws all reasonable

inferences in the plaintiff's favor.  *See, e.g.*, *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833,

838 (8th Cir. 2014) (citation omitted)).  While a complaint's factual allegations need not be detailed, they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities).  A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A district court's consideration of whether a pleading states a claim is "context-specific"; a court must "draw on its judicial experience and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (making same points (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)) (cleaned up)).  Courts should construe *pro se* complaints like Braun's "'liberally,'" but such pleadings must still allege enough facts to support the claims advanced.  *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741-42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

**B.    The Complaint's Causes of Action**

Liberally construed, the Complaint appears to assert five causes of action.  First, Braun pleads a state-law breach-of-contract claim, alleging that he and Vierzba formed an oral agreement that Vierzba later violated.  Second, Braun appears to assert a Fourth Amendment claim under 42 U.S.C. § 1983 based on unreasonable searches and seizures.  Third, Braun's reference to the Fifth Amendment suggests a claim based on the privilege against self-incrimination.

Fourth, Braun cites the Fourteenth Amendment, but the precise theory is unclear; the Court construes this as some sort of due-process claim.  Finally, the Complaint can be read to assert a First Amendment retaliation claim under § 1983, alleging that after Braun

took the polygraph and Vierzba refused to help him, Vierzba took retaliatory actions, including pursuing an arrest and initiating child-protection reporting.

## C.      Sovereign Immunity and Official-Capacity Claims

As noted above, Braun sues Vierzba in both his individual and official capacities. Braun does not identify Vierzba's employer, but given Vierzba's apparent role in the State of Minnesota's ISR system, the Court assumes for present purposes that he is a State employee.

An official-capacity suit against a state officer is treated as a suit against the State itself. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing cases); *Bio Gen LLC v. Sanders*, 142 F.4th 591, 604 (8th Cir. 2025) (citing *Will*). The Eleventh Amendment gives states and state agencies immunity from federal suits, unless the state has consented to suit or there has been a valid congressional abrogation. *See, e.g.*, *EEE Mins., LLC v. North Dakota*, 81 F.4th 809, 815 (8th Cir. 2023) (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). Minnesota has not waived its immunity for § 1983 claims, and § 1983 did not abrogate state sovereign immunity. *See, e.g.*, *Roe v. Nebraska*, 861 F.3d 785, 789 (8th Cir. 2017) (citing *Will*, 491 U.S. at 66-67); *Leach v. Minnesota Dep't of Hum. Servs.*, No. 25-3220 (PAM/SGE), 2025 WL 3724508, at *2 (D. Minn. Dec. 24, 2025) ("Minnesota has not waived immunity or otherwise consented to

suit."). Sovereign immunity therefore bars Braun's official-capacity claims against Vierzba, and the Court recommends dismissing those claims as frivolous.[4]

## D.      Fourth Amendment Claim

For his Fourth Amendment claim, Braun alleges that Vierzba sought a warrant for Braun's arrest, arrested him at his workplace, and then searched his workplace, locked vehicle, and two locked cellphones. Braun claims these searches violated the Fourth Amendment because "[MDOC] Policy requires Agents to only search the person" and "explicitly" prohibits "searching locked vehicles, phones, and the workplace." (Dkt. 1 at 1.) Braun also argues the searches were invalid because the warrant that Vierzba obtained was "solely for the allegation of [Braun] not maintaining residence at the ISR leased house." (*Id.*)

These allegations do not state a plausible Fourth Amendment claim. First, an alleged violation of internal MDOC policy does not, by itself, establish a constitutional violation. Section 1983 provides a remedy only for deprivations of rights secured by the Constitution or federal law. Internal policies and guidelines do not create federal rights enforceable under § 1983, and an official's violation of agency policy does not make otherwise lawful conduct unconstitutional. *See, e.g.*, *Mettler v. Whitledge*, 165 F.3d 1197, 1203 (8th Cir. 1999) (citing *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1989)); *Thompson v. Clay Cnty. Sheriffs*, No. 25-CV-2398 (KMM/JFD), 2025

---

[4]      Braun does not seek declaratory or prospective injunctive relief, which are the only forms of relief that might be available in an official-capacity suit under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).

WL 3723500, at *4 (D. Minn. Oct. 9, 2025) (citation omitted), *R. & R. adopted*, 2025 WL 3724027 (D. Minn. Dec. 23, 2025).

Second, even construing the Complaint liberally, Braun does not plead facts that permit a plausible inference that the searches were "unreasonable" under the Fourth Amendment.  Braun's allegations place the events in the context of ISR, as reflected in the references to an "ISR Agent" and an "ISR leased house."  (Dkt. 1 at 1.)  Minnesota law lets the MDOC place an offender on ISR and impose "appropriate conditions of release," including "unannounced searches by an intensive supervision agent of the inmate's person, vehicle, premises, computer, or other electronic devices capable of accessing the Internet."  Minn. Stat. § 244.05, subd. 6(c)(1).  Fourth Amendment caselaw also recognizes that supervised offenders have a diminished expectation of privacy.  The reasonableness of a search turns on the totality of the circumstances—including whether the person searched is subject to supervision and the applicable supervision conditions. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 850-57 (2006).

Here, the Complaint does not describe Braun's ISR conditions.  Braun does not explain whether those conditions allowed searches of his vehicle or electronic devices, whether any consent was required as a condition of release, or other facts relevant to the ISR-based reasonableness inquiry.  Braun also does not attach the relevant arrest warrant or describe its operative terms, offering only the conclusory assertion that it was "solely" for an allegation about where he lived.  Without factual allegations addressing the scope of Braun's ISR conditions and the warrant, the Complaint does not plausibly allege that the searches violated the Fourth Amendment.

7

Third, to the extent Braun challenges the seizure itself (i.e., his arrest), he alleges only that Vierzba sought and obtained a warrant and then arrested him. (Dkt. 1 at 1.) A plaintiff seeking damages for a warrant-based seizure may bring a § 1983 claim alleging that the warrant was obtained through a deliberate falsehood or reckless disregard for the truth. *See, e.g.*, *Arman v. Severance*, No. 20-CV-677 (NEB/DTS), 2021 WL 231071, at *5 (D. Minn. Jan. 22, 2021) (citing cases); *Kingdom Holdings, LLC v. Foss*, No. 23-CV-5060 (LLP), 2024 WL 4266755, at *4 (D.S.D. Sept. 23, 2024) (same). Here, however, Braun does not identify any false statement or material omission in the warrant application and does not describe what Vierzba presented to the judge.

For these reasons, Braun's Fourth Amendment claim, as pleaded, fails to state a claim on which relief can be granted. The Court therefore recommends dismissing the claim without prejudice.

### E.     Fifth Amendment Claim

Braun refers to the Fifth Amendment in passing, suggesting that Vierzba's actions violated his right "to not be witness against myself." (Dkt. 1 at 2.) The Court construes this as an attempt to invoke the Fifth Amendment's Self-Incrimination Clause, under which "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." To state a Fifth Amendment self-incrimination claim under § 1983, a plaintiff must allege that he was forced to make incriminating statements against himself, and that those statements were used against him in a criminal case. *See, e.g.*, *Entzi v. Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) (citing opinions in *Chavez v. Martinez*, 538 U.S. 760

(2003)); *Peirce v. Aswegan*, No. 22-CV-2664 (DWF/DJF), 2023 WL 2898595, at *2 (D. Minn. Apr. 11, 2023).

The Complaint does not allege that Braun was compelled to speak or confess. He alleges that he voluntarily took a polygraph exam, which he passed, suggesting that he maintained his innocence during the exam. The Complaint does not allege that Vierzba forced Braun to answer questions or that any statements Braun made during the exam were later used to incriminate him. Braun's brief reference to not being made "a witness against myself" therefore reads as a mere legal catchphrase unsupported by facts.

The Complaint thus fails to plead a viable Fifth Amendment theory.[5] The Court therefore recommends dismissing this claim without prejudice.

## F.    Fourteenth Amendment Claim

The Complaint generally invokes the Fourteenth Amendment; as noted above, the Court construes this as potentially attempting to raise a due-process claim. Due-process claims can take two forms: (1) claims of substantive due process, claiming that Vierzba's conduct was so egregious or arbitrary that it "shocks the conscience" or interfered with rights implicit in ordered liberty; and claims of procedural due process, claiming that Vierzba deprived Braun of some liberty or property interest without adequate legal

---

[5]    Braun may well be confused about the scope of the Fifth Amendment and trying to invoke due process. The Fifth Amendment's Due Process Clause applies to federal actors, while the Fourteenth Amendment's clause applies to state actors. Because Vierzba is a state agent, any due-process claim falls under the Fourteenth Amendment, which is addressed separately below.

process. Either way, the Court finds that Braun's allegations do not state a plausible due-process claim.

As a threshold matter, when asserted rights are covered by a more specific constitutional provision, substantive due process does not apply. *See, e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998) (citing cases). So to the extent the Complaint challenges a search and seizure, those allegations are governed by the Fourth Amendment, not Fourteenth Amendment substantive due process. The question, then, is whether the Complaint alleges any conduct that meets the substantive-due-process standard and falls outside the scope of Braun's other constitutional claims.

To state a substantive-due-process claim, a plaintiff must allege that a government official's conduct "violated one or more fundamental constitutional rights and [was] 'shocking to the contemporary conscience.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (citation modified)); *see also Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, No. 20-CV-1971 (DSD/ECW), 2021 WL 3293627, at *4 (D. Minn. Aug. 2, 2021) (quoting *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009)). The "shocks the conscience" standard applies only to conduct that is brutal, egregious, or constitutionally arbitrary. *See, e.g.*, *Lewis*, 523 U.S. at 846-50 (citing cases); *Doe v. Aberdeen Sch. Dist.*, 42 F.4th 883, 894 (8th Cir. 2022) (quoting *Lewis*-reliant caselaw). Reviewing the Complaint under these standards, the Court cannot conclude that Braun has alleged a violation of substantive due process based on Vierzba's alleged conduct. The Court therefore recommends dismissing any such claim.

10

This leaves the possibility of a procedural-due-process claim.  To plead a procedural-due-process claim under § 1983, a plaintiff must allege facts showing that he was deprived of a constitutionally protected liberty or property interest.  *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Only after establishing such an interest does the question of what process was due (and whether it was provided) become relevant.  *See, e.g.*, *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Mathews v. Eldredge*, 424 U.S. 319, 332-35 (1976)).  Here, the Complaint fails on both points.  Braun does not identify any specific liberty or property interest of which he was allegedly deprived, and even assuming that he has asserted a liberty interest, he does not allege that any deprivation occurred without adequate procedures.  The Court therefore also recommends dismissing the Complaint without prejudice to the extent it raises such a claim.

## G.    First Amendment Retaliation

The Complaint's final potential federal-law claim is that Vierzba retaliated against Braun in violation of the First Amendment.  To allege First Amendment retaliation, a plaintiff generally must allege that "'(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'"  *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)); *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) (same and noting that "[f]ailure to satisfy any of the three elements results in the failure of the claim.").

As pleaded, the retaliation claim is not plausibly supported.  First, the Complaint does not affirmatively identify a protected activity by Braun, leaving the Court to speculate on Plaintiff's behalf.  Taking a polygraph exam, for instance, is not a First Amendment activity.  And while proclaiming one's innocence might constitute speech in some contexts, the Complaint does not describe any specific instance of Braun speaking in a way that implicates the First Amendment (e.g., filing a formal complaint, speaking to the media, or protesting his conviction publicly).  The Complaint also does not plausibly allege retaliatory motive.  If Braun's theory is that Vierzba retaliated because Braun intended to use the polygraph results in some First Amendment-protected manner, the Complaint does not provide enough facts to support that inference.

Accordingly, to the extent Braun intends to assert a First Amendment retaliation claim, the allegations are insufficient to proceed.  The Court therefore recommends dismissing that claim without prejudice.

## H.    Supplemental Jurisdiction

Under the discussion above, the Court recommends dismissing all of the Complaint's federal-law claims.  As noted above, however, the Complaint also purports to raise a state-law breach-of-contract claim, which in turn raises the question of supplemental jurisdiction.  Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  But § 1367(c)(3) lets a district court "decline to exercise supplemental jurisdiction over a

12

claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The Eighth Circuit has provided explicit guidance that applies here:

A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970-71 (8th Cir. 2016) (citation modified); *see also, e.g.*, *Schultz v. 3M Co.*, No. 25-CV-3223 (JMB/SGE), 2025 WL 3015136, at *3 (D. Minn. Sept. 5, 2025) (quoting *Wilson*). Consistent with *Wilson*, the Court recommends declining to exercise supplemental jurisdiction over Braun's state-law claims.

The Court therefore recommends dismissing the Complaint in its entirety. Given this recommendation, the Court also recommends denying the IFP Application as moot.

### III.   RECOMMENDATION

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff Nathan C. Braun's filing titled "Civil Suit for Violation of Constitutional Rights and Breach of Contract" (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(e)(2) to the extent it brings any federal-law claims;

2. The Complaint be **DISMISSED WITHOUT PREJUDICE**, for lack of jurisdiction, to the extent it brings any state-law claims; and

3.      Braun's Petition to Proceed In Forma Pauperis (Dkt. 2) be **DENIED** as moot.

Dated: February 9, 2026

s/ *Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).